States District Court
of Connecticut
BRIDGE CRT
10/05/2020 —20
Robin D. Tabora, Clerk
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | INFORMATION |
| | : | |
| v. | : | |
| | : | |
| DAVID DUNN | : | CRIMINAL NO. 3:20cr 181 (KAD) |

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

The United States Attorney charges:

1.    From at least in or about March 2018, up to and including at least in or about December 2018, in the District of Connecticut and elsewhere, DAVID DUNN, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, and with others known and unknown, to commit offenses against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

2.    It was a part and object of the conspiracy that DAVID DUNN, the defendant, and others known and unknown, knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs,

signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, DUNN and others known and unknown agreed to (i) embezzle confidential information from the City of Bridgeport ("the City") relating to the open and competitive examination required by the City's Charter to select the new permanent police chief, (ii) deceive the City into ranking DUNN's co-conspirator, a candidate for the police chief position, ("CC-1") as one of the top three candidates, and ultimately awarding the permanent police chief position and resulting contract to CC-1 under false and fraudulent pretenses, and (iii) deprive the City of its right to control the use of its assets, by depriving the City of financially valuable information relevant to its decision on how to allocate the permanent police chief position and the resulting employment contract.

Overt Acts

3.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed and caused to be committed in the District of Connecticut and elsewhere:

a.    In or around March 2018, DAVID DUNN, the defendant, acting on behalf of the City in his capacity as Acting Personnel Director oversaw the "examination" process required by the City's Charter for the permanent Chief of Police position, and retained

2

an outside consultant ("Consultant-1") to assist with developing and carrying out the examination.

b.   DUNN instructed Consultant-1 that there should be no requirement that a candidate possess a bachelor's degree, or any penalty for candidates who did not have one, knowing that CC-1 did not have one.

c.   In or around June 2018, having been provided by Consultant-1 with confidential material related to the City's open and competitive examination to select the new permanent police chief -- including a scoring guide for the questionnaire that was part of the written portion of the permanent police chief examination ("the Written Exam") --DUNN provided that scoring guide to CC-1.

d.   In or around 2018, DUNN asked Consultant-1 to make certain changes to the scoring system for grading the Written Exam, all to benefit CC-1, including modifying the scoring system to award more points for duration of law enforcement experience, to eliminate any penalty for not residing in the City, to eliminate any penalty for the lack of a Bachelor's degree, and to award CC-1 extra points for his then-current service as an acting police chief.

e.   On or about July 18, 2018, having received from Consultant-1 an email attaching the confidential questions that Consultant-1 planned to use in the next stage of the examination

3

process, telephonic interviews of candidates (the "Oral Exam"),
DUNN forwarded that email (including the attachment) to CC-1,
writing, "Call me please."

     f.   In or around September and October 2018, in
response to a *Connecticut Post* article critical of the secrecy
surrounding the police chief hiring process, DUNN circulated an
email to the Mayor's office suggesting that the City's response
should emphasize the "Confidentiality of test
questions/candidates/examiners," writing, "This exam for Police
Chief is a competitive selection process for an executive level
employment position and at a minimum, while ongoing, the process
should be confidential to ensure integrity and fairness of the
process."

     g.   On or about October 11, 2018, in advance of the
final stage of the examination process, an October 19, 2018 panel
interview conducted by five independent panelists (the "Panel
Interview"), and having received from Consultant-1 an email
attaching 42 suggested questions (15 of which were highlighted)
for the Panel Interview, DUNN forwarded that confidential
information from his City email account to his own personal email
account.

     h.   On or about October 15, 2018, approximately four
days before the Panel Interview, DUNN texted CC-1: "Call me

regarding sgt exam," then called CC-1's cellphone. Shortly thereafter, CC-1 called DUNN back.

i.   On or about October 18, 2018 (the day before the Panel Interview), and in an effort to influence the outcome of that Interview process, DUNN called a panelist and stated that the Mayor wanted CC-1 to be "in the top three."

j.   On or about October 23, 2018, after the police chief examination was complete, the City issued a press release announcing the top three candidates (which included CC-1), in which DUNN falsely stated, "We...have taken great measures to ensure a fair and competitive process."

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (False Statements)

The United States Attorney further charges:

4.   On or about February 13, 2020, DAVID DUNN, the defendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter being investigated by law enforcement based in the District of Connecticut and within the jurisdiction of the executive branch of the Government of the United States, to wit, DUNN falsely denied to a special agent of the Federal Bureau of Investigation and a United States Attorney's Office investigator that he had told a panelist, who was responsible for ranking the candidates in the

final stage of the examination for the police chief, that the Mayor of Bridgeport wanted CC-1 to be ranked among the top three candidates.

(Title 18, United States Code, Sections 1001(a)(2).)

_Audrey Strauss_
AUDREY STRAUSS
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF NEW YORK
Acting Under Authority Conferred
by 28 U.S.C. § 515